**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALVIA L. LACY,
<u>Plaintiff-Appellant,</u>

v.                                                                   No. 98-1914

AMTRAK,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-97-2031-JFM)

Argued: November 30, 1999

Decided: February 28, 2000

Before MICHAEL and TRAXLER, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gregory L. Nester, MARVIN I. BARISH LAW
OFFICES, P.C., Philadelphia, Pennsylvania, for Appellant. Anthony
Walter Kraus, MILES & STOCKBRIDGE, P.C., Baltimore, Mary-
land, for Appellee. **ON BRIEF:** Wanda Morris Hightower, Deputy
General Counsel, NATIONAL RAILROAD PASSENGER CORPO-
RATION, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Alvia Lacy (Lacy) appeals from the district court's grant of summary judgment to Amtrak on Lacy's claim that she was subjected to a hostile work environment based on her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A.§§ 2000e-1 to -17 (West 1994). Because we find that the conduct Lacy complains about is not sufficiently severe or pervasive so as to create a hostile working environment based on gender, we affirm.

I.

Amtrak hired Lacy, an African-American, as a trackman in 1983. Her responsibilities included laying track, removing old rail, repairing switches, and operating mechanical equipment to keep the track in running order. In 1988, Lacy transferred to the position of car repairman. In that capacity, she worked with a group of maintenance workers repairing and renovating Amtrak passenger cars. While employed by Amtrak, Lacy earned a bachelor of science degree in business management from the University of Maryland, and thereafter applied for numerous management positions, all of which she was denied. During her tenure at Amtrak, Lacy experienced four separate incidents that are at issue in this appeal.

In the first incident, Michael Sheridan (Sheridan), Lacy's former foreman, heard an Amtrak manager refer to Lacy as a"black bitch." (Sheridan Decl. ¶ 3 (attached to Plaintiff's Response to Motion of Defendant Amtrak for Summary Judgment)). During her deposition, Lacy testified that she did not know which management person had uttered the slur and that "because [she] work[ed] with these people on a daily basis, five days a week, [she] didn't want to know who they were." (Lacy Deposition at 113-14, 116 (attached to Memorandum in Support of Defendant Amtrak's Motion for Summary Judgment)).

2

There is no indication in the record as to who made the slur or when the incident occurred.[1]

In the second incident, Lacy claims that an offensive cartoon was left on her locker. The cartoon depicted an inverted pyramid portraying a white male and a white female pointing toward the bottom of the pyramid. One of the figures is saying, "That'll be _____ there." (Pl.'s Resp. Ex. 18). The original reference had been erased from the caption and in the blank space had been inserted the word "Rosy."[2] Below the word Rosy was written "and Alvia," referring to Lacy. Lacy did not know who placed the cartoon on her locker, did not report the incident to Amtrak's management, and indicated in her deposition in this case that she believed the cartoon "was just a big joke." (J.A. 24).

In the third incident, Lacy's foreman, Pat Gallo (Gallo), verbally reprimanded Lacy and Michael Skinner (Skinner) about the speed of their work, stating "you're not doing your job."[3] (Lacy Dep. at 154). Lacy took the reprimand personally and was very upset. Neither Lacy nor Skinner, however, filed a grievance over the reprimand.

Finally, in the fourth incident, Lacy asserts that in allocating work assignments, Sheridan was instructed by unidentified Amtrak managers to "overload" her with work. (Sheridan Decl. ¶ 3 (attached to Mem. Supp. Def.'s Mot. Summ. J.)). The only evidence Lacy provided concerning this incident was Sheridan's declaration. The declaration, however, provides no identification of who gave the order, when the alleged instruction was given, why it was given, or whether it was ever carried out.[4]

---

[1] In addition to this one specific incident, on December 2, 1996, Sheridan wrote a letter to Lacy stating that there were multiple incidents of such name calling. This letter, however, fails to specify the identities of the name-callers or when the incidents occurred. Moreover, the record is completely devoid of such specifics.

[2] Rosy referred to Roosevelt Gill, an African-American male who worked at the same location as Lacy.

[3] Skinner is a male.

[4] The record does contain evidence that the time period in which Sheridan had been Lacy's foreman was in 1992 and 1993. (Lacy Dep. at 106).

Based on this conduct, on December 23, 1996, Lacy filed a complaint with the EEOC alleging "denial of promotion, denial of equal opportunity, unfair business practices, unethical business practices, favoritism in job assignments, and rates, racial slanderous, degrading, and detrimental statements, and written notes directed towards [her], in addition to harassment and aggravation." (Pl.'s Resp. Ex. 2 (reprinted verbatim)). On March 26, 1997, the EEOC issued Lacy a notice of right to sue.

On June 24, 1997, Lacy, acting pro se, filed suit in the United States District Court for the District of Maryland. In her complaint, Lacy re-alleged the claims she had asserted in her EEOC complaint, including the claim alleging a hostile work environment based on her gender. After some discovery was conducted, Amtrak moved for summary judgment with respect to all of Lacy's claims.**5**

On May 18, 1998, the district court issued a memorandum opinion and order granting Amtrak summary judgment on all of Lacy's claims. On June 12, 1998, Lacy noticed a timely appeal limited solely to her claim alleging a hostile work environment based on her gender. Accordingly, this is the only claim at issue on appeal.

II.

This court reviews de novo the district court's grant of summary judgment in favor of Amtrak with respect to Lacy's Title VII hostile work environment claim based on gender. See Mikels v. City of Durham, N.C., 183 F.3d 323, 328 (4th Cir. 1999). A moving party is entitled to summary judgment if the evidence before the court shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The nonmoving party must provide "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis added) (internal quotation marks omitted). "A complete failure of proof concerning an essential ele-

_____

**5** The record does not reflect whether Lacy engaged in any discovery other than obtaining affidavits to support her opposition to Amtrak's motion for summary judgment. Lacy, however, has not asserted that the district court failed to permit her sufficient time to conduct discovery.

4

ment of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Accordingly, summary judgment is appropriate if the evidence before the district court lacks sufficient specific facts on which a reasonable juror could find for the nonmoving party. See Anderson, 477 U.S. at 252.

A Title VII hostile work environment claim based on gender requires the plaintiff to prove four elements: (1) the alleged discriminatory conduct was unwelcome; (2) it was based on her gender; (3) it was sufficiently severe or pervasive to alter the conditions of her employment and to create a hostile work environment; and (4) it was imputable on some factual basis to her employer. See Spicer v. Virginia Dept. of Corrections, 66 F.3d 705, 710 (4th Cir. 1995) (en banc); see Mikels, 183 F.3d at 329. On appeal, to support her claim that she was subjected to a hostile work environment based on her gender, Lacy directs our attention to the four incidents set forth above in Part I. They are: (1) when Sheridan heard an unnamed Amtrak manager call Lacy a "black bitch"; (2) when someone placed a derogatory cartoon on her locker; (3) when Gallo reprimanded her; and (4) when Sheridan was told by his supervisors to overload Lacy with work assignments. We need not determine whether Lacy has shown that these four incidents, individually or collectively, were (1) unwanted, (2) based on her gender, or (3) imputable to Amtrak, because these incidents are not sufficiently severe or pervasive to objectively constitute a hostile work environment.

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview." Harris v. Forklift Sys., Inc. , 510 U.S. 17, 21 (1993). Likewise, if Lacy did not "subjectively perceive the environment to be abusive," then the alleged discriminatory conduct was not sufficiently severe or pervasive to alter her conditions of employment. Id. In determining whether discriminatory conduct was sufficiently severe or pervasive, we look to the totality of the circumstances. See id. at 23. Among the circumstances we look to are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.

5

With these principles in mind, we will examine each incident prof-
fered by Lacy for its evidentiary force and then view the incidents in
their totality.

The first incident, in which an Amtrak manager referred to Lacy
as a "black bitch," is not, in itself, actionable. See id. at 21 ("`[M]ere
utterance of an . . . epithet which engenders offensive feelings in a[n]
employee,' does not sufficiently affect the conditions of employment
to implicate Title VII." (quoting Meritor Sav. Bank, FSB v. Vinson,
477 U.S. 57, 67 (1986))); Schwapp v. Town of Avon, 118 F.3d 106,
110 (2d Cir. 1997) (noting that "`there must be a steady barrage of
opprobrious racial comments'" (quoting Bolden v. PRC Inc., 43 F.3d
545, 551 (10th Cir. 1994))). Nevertheless, a slur or epithet, when cou-
pled with other probative evidence, can create a hostile work environ-
ment based on gender. See, e.g., Westvaco Corp. v. United
Paperworkers Int'l Local 676, 171 F.3d 971, 972-73 (4th Cir. 1999);
Mendoza v. Borden, Inc., 195 F.3d 1238, 1249-51 n.8, 1252 n.10
(11th Cir. 1999) (citing cases).

The second incident involving the cartoon is of no assistance to
Lacy. As an initial matter, the offensive nature of the cartoon con-
cerns race not gender, so it is difficult to discern how this cartoon evi-
dences a hostile work environment based on gender. Simply because
Lacy is a woman does not mean that the cartoon was directed at her
because of her gender. See Hartsell v. Duplex Prods., Inc., 123 F.3d
766, 772 (4th Cir. 1997) ("An insulting or demeaning remark does not
create a federal cause of action for sexual harassment merely because
the `victim' of the remark happens to belong to a class protected by
Title VII."). Moreover, the record does not indicate who created the
cartoon or sent it to Lacy. Accordingly, the cartoon is not probative
evidence that Lacy was subjected to a hostile work environment based
on her gender.

The third incident involving Gallo's reprimand of Lacy and Skin-
ner is also no help to Lacy. Gallo's reprimand was based on Lacy's
work performance and there is no indication that it was motivated by
her gender. In fact, the evidence undermines such a conclusion
because Gallo directed the reprimand at both Lacy and her male
coworker, Skinner. See Gross v. Burggraf Constr. Co., 53 F.3d 1531,
1545-46 (10th Cir. 1995) ("Title VII . . . does not give a woman

6

immunity from being reprimanded in the presence of her co-workers if her supervisor believes she has violated work rules or has been negligent in performing her job."). Accordingly, Gallo's verbal reprimand based on perceived deficiencies in Lacy's work provides no evidence that Lacy was subjected to a hostile work environment based on her gender.

Finally, the incident where Sheridan was told by Amtrak managers to overload Lacy with work assignments also fails to assist Lacy. As an initial matter, Lacy has not pointed to any evidence that indicates that Amtrak managers sought to overload her with work because of her gender. Further, there is no evidence that Sheridan did in fact overload Lacy with work. Absent evidence showing that Sheridan followed up on his supervisor's orders, Lacy cannot show that the order to overload her with work interfered with or affected her work performance in any way.

As noted above, we must consider the totality of the circumstances in deciding whether Lacy was subjected to a hostile work environment based on her gender. Taken collectively, these four incidents do not meet the requirement that the discriminatory conduct be severe or pervasive. The only incident carrying any evidentiary force is the incident involving the one-time slur. However, "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not actionable. B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992), quoted in Faragher v. City of Boca Raton , 118 S. Ct. 2275, 2284 (1998); see also Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996) (affirming summary judgment for the defendant because a supervisor's alleged harassment by sexual innuendos, jokes, and physical contact did not create a sufficiently hostile work environment); Dwyer v. Smith, 867 F.2d 184, 187-89 (4th Cir. 1989) (holding that the plaintiff's complaints that she was subjected to pornographic material in her mailbox, was accused of having sex with other workers, and was subject to sexually explicit conversations was not sufficiently severe or pervasive).[6]

---

[6] On appeal, Lacy argues that in light of the Supreme Court's decisions in Faragher, 118 S. Ct. 2275, and Burlington Industries, Inc. v. Ellerth,

III.

Because no reasonable juror could find that the incidents, either isolated or collectively, are sufficiently severe or pervasive so as to create a hostile work environment based on gender, we affirm the district court's grant of summary judgment in favor of Amtrak.

AFFIRMED

_____

118 S. Ct. 2257 (1998), the district court utilized the wrong standard to determine whether the conduct alleged by Lacy as the basis for her hostile work environment claim was imputable to Amtrak. The Faragher and Ellerth opinions, however, focused solely on the fourth element and did not change the requirements that conduct be unwanted, be based on the gender of the plaintiff, and be severe or pervasive so as to alter the terms and conditions of employment. See Ellerth , 118 S. Ct. at 2265 (accepting the district court's finding that the conduct was sufficiently severe or pervasive before engaging in the vicarious liability analysis). Because we conclude that Lacy has failed to establish that the conduct complained of was sufficiently severe or pervasive to be actionable, we need not address Lacy's argument that the Supreme Court's rulings in Faragher and Ellerth mandate a remand.

8