**Gregory L. BOYKIN, Plaintiff,**

v.

**John W. SNOW, Secretary of the Treasury, Defendant.**

No. 1:02CV0047 DS.

United States District Court,
D. Utah,
Central Division.

Aug. 11, 2004.

Brad C. Smith, Stevenson & Smith, Ogden, UT, for Plaintiff.

Jeannette F. Swent, U.S. Attorney's Office, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

SAM, Senior District Judge.

### I. INTRODUCTION

Plaintiff, an African–American male, was employed as a GS–7 tax examiner at the Internal Revenue Service ("IRS") Service Center in Ogden, Utah. He claims that he was the victim of a hostile work environment based on his race, gender, and EEO activities; that he was discriminated against when he was not selected for a higher-grade position; and that he was constructively discharged from his job at the IRS.

Defendant has moved for summary judgment on the grounds that plaintiff has failed to carry his burden of proof for each of his claims.

### II. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is

on the moving party.[1] E.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record and affidavits, if any, it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

In considering a motion for summary judgment, the record must be viewed in a light most favorable to the non-moving party. *Id.* at 322, 106 S.Ct. 2548. The critical issue in this case, then, is whether a reasonable jury, looking at all the evidence and the reasonable inferences therefrom in a light most favorable to the plaintiff, could find that a hostile work environment existed and that it was reasonably related to the race-based harassment that the plaintiff suffered. *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093 (10th Cir.1999). In determining whether a hostile work environment existed, the court considers the frequency and the severity of the discriminatory conduct. *Id.* at 1098. The *O'Shea* court noted that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'"

### III. DISCUSSION

#### A. Hostile Work Environment Claim.

■ Although Title VII of the Civil Rights Act of 1964 does not explicitly mention hostile work environment, "it is well established a victim of a racially hostile or abusive work environment may bring a cause of action pursuant to 42 U.S.C. § 2000e–2(a)(1)." *Bolden v. PRC Inc.*, 43 F.3d 545, 550 (10th Cir.1994). For harassment to be actionable, the conduct must be

"sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 550 (citations omitted). General harassment and taunting are not actionable if not racially discriminatory. There must be "a steady barrage of opprobrious racial comments," not just a few racial slurs. *Bolden* at 551. The Tenth Circuit in the *O'Shea* case did note, however, that the trier of fact must examine the totality of the circumstances, including "the context in which the alleged incidents occurred." *O'Shea* at 1097. The court stated, "Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *Id.* at 1097.

In *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir.1998), the Tenth Circuit set forth a plaintiff's responsibility for a hostile environment claim to survive a summary judgment motion: "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 1261.

■ The defendant in the present case has moved for summary judgment on the grounds that the plaintiff "cannot carry his burden of showing either that he was subjected to pervasive or severe harassment or that the harassment was based on his race, gender or EEO duties." In considering this motion, the court must simply determine whether the plaintiff has provided sufficient evidence of discrimination

---

**1.** Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

that a reasonable jury, after considering the evidence in a light most favorable to the plaintiff, *could* find that there was a hostile work environment resulting from race-based discrimination. And, as stated above, the 10th Circuit Court in *O'Shea* stated that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'" *O'Shea,* at 1098.

█ The plaintiff in this case has made numerous allegations to support his claim of a hostile work environment at the IRS. Many of these incidents, including the following, appear quite clearly to be racially motivated:

- Plaintiff was repeatedly called "nigger" by some of his co-workers.
- Those he associated with were called "nigger lovers."
- In 1998, a meeting was held where management asserted that plaintiff was hired as a result of affirmative action. Tension and animosity of his co-workers increased after this meeting.
- Plaintiff was referred to as "boy" on several occasions by both managers and coworkers.
- During one incident, Plaintiff was sprayed with disinfectant, was told his "black ass" would be hauled to the union office, and was referred to as a "son of a bitch." Three weeks later another reference was made by the same person to Plaintiff's "black ass."
- Several managers referred to blacks as "you people" in conversations with Plaintiff.
- When plaintiff raised concerns about how he was being treated, the center director said, "If minorities in the agency were actually trying, they were doing a poor job."

█ Some of the other incidents that the plaintiff alleges occurred, are not as obviously racial in nature. However, under the *O'Shea* court's rationale, facially neutral abusive behavior should be considered along with overtly discriminatory behavior in determining whether a hostile work environment existed. *O'Shea,* 1097. Some of the facially neutral abusive behavior alleged by the plaintiff includes the following:

- On 50–60 occasions, co-workers stopped at Plaintiff's desk, caught his attention, and pointed or stared to distract him from his work.
- One manager treated him like a dog on at least four occasions.
- One manager yelled at him at least 30 times in a way in which she did not deal with other employees. She also falsely accused him of lying and threatened to terminate him.
- Plaintiff was subjected to sexually explicit comments about his body.
- Plaintiff's tires were slashed—allegedly by co-workers—in the parking lot.
- Co-workers tried to run him off the road in his car after he filed an EEO complaint.
- Plaintiff was slapped, hit, or struck by co-workers a minimum of 20 times.
- One co-worker struck him about 30 times.
- Plaintiff was told he'd be made an example of as an EEO counselor. Management also threatened on multiple occasions that the EEO office would do nothing about Plaintiff's issues.
- At one point plaintiff was tailed everywhere he went, including to the bathroom, and was told by his supervisor he was suspicious.

All of the above allegations, when viewed in a light most favorable to the plaintiff, are sufficient that a reasonable

jury could find that plaintiff was subjected to a hostile work environment and that it was reasonably related to the race-based harassment that the plaintiff suffered.

■ The defendant suggests, and the court recognizes, that the alleged abusive behavior toward the plaintiff could have resulted from other non-discriminatory circumstances and motives, such as the rude and abusive personalities of the plaintiff's managers and co-workers; their hostility at his own arrogance; or their jealousy at his professional achievements. However, that is a factual determination that should be left to a jury.

■ The defendant further argues that even if there was discrimination in this case, the IRS should not be held liable because either, (1) they took proper remedial or preventative action, or (2) the plaintiff did not report all of the incidents to his managers, and the harassment was not so pervasive that it supports an inference of knowledge. However, there are some serious factual disputes regarding these two issues as well. While the defendant argues that the plaintiff's complaints were appropriately addressed and resolved by his superiors, the plaintiff maintains that on numerous occasions management either ignored the plaintiff or conveyed the impression that they were not going to do anything about his concerns. Also, his managers often participated in the inappropriate behavior. Plaintiff contends that management's response actually contributed to the hostile work environment.

Similarly, there are genuine issues of material fact regarding whether the plaintiff reported the harassment he was experiencing, so that the defendant had sufficient knowledge to be liable. Defendant argues that the plaintiff failed to report many of the incidents of hostility to his managers when they occurred, so there is no liability. However, as stated above, plaintiff maintains that he repeatedly went to supervisors to address concerns, and was either avoided or ignored. And these same managers' active involvement in the harassment indicates that they must have known what was going on. Because there are genuine issues of material fact regarding the adequacy of the IRS's response to the situation and their knowledge of what was occurring, summary judgment would not be appropriate here. Therefore, defendant's motion for summary judgment with regard to this claim is denied.

## B. Plaintiff's Non–Selection For GS–9 Position.

Plaintiff has alleged that he was also discriminated against when he was not selected for a higher-grade position at the IRS that he applied for in 2000. In his opposition memorandum, plaintiff does not mention his race or gender discrimination claims, apparently conceding that he was not discriminated against on those grounds. The only remaining claim is that his nonselection resulted from discrimination based on his prior EEO activity.

■ Thelma Harris, the one who made the hiring decision at that time, said in her statement that she did not know of the plaintiff's prior EEO activity when she decided not to select him. In making her decision she relied on the interview panel results, which rated all the candidates outstanding, but indicated that plaintiff's "written communication could be improved." She said that because "written communications are critical to this job," she selected other applicants for the two available positions. As noted by the defendant, this is a legitimate, non-discriminatory reason for not selecting the plaintiff.

■ The burden now shifts to the plaintiff to demonstrate that this reason is pretextual. Plaintiff alleges that two of the three interview panel members were inti-

mately familiar with his prior EEO activity. One panelist in particular laughed at plaintiff when he called to apply, discouraged him from applying, and gave him the impression he would not be hired. She also allegedly laughed at plaintiff again when calling to tell him of the decision. Although Ms. Harris may not have known about plaintiff's EEO activity and may have honestly believed the assessment of plaintiff's writing skills, the information she relied on in making her decision may have been tainted with discrimination.

Considering the evidence in a light most favorable to the plaintiff, a reasonable jury *could* find that the plaintiff was discriminated against, and that the reason given for not hiring him was pretextual. Again, this would be a factual determination, and therefore should be left to the jury. The defendant's motion for summary judgment on the non-selection claim is denied.

### C. Plaintiff's Constructive Discharge Claim.

Plaintiff alleges that because of intolerable working conditions at the IRS, he was forced to take a medical leave of absence in 1998 and eventually, in July 2000, to resign from the IRS to accept a position at Hill Air Force Base. He argues that this constitutes constructive discharge.

According to the defendant, during the administrative phase of this dispute, the plaintiff alleged that he was constructively discharged as of July 15, 2000. However, the EEOC Office of Federal Operations dismissed this claim based on plaintiff's failure to undergo EEO counseling within 45 days of that date (the first time he raised the issue of constructive discharge was on February 2, 2001). Plaintiff made no other claims of constructive discharge during the administrative process. In his memorandum opposing summary judgment, he alleges for the first time that he was constructively discharged in 1998, when he took a medical leave of absence.

██ A plaintiff is required to exhaust administrative remedies in order to initiate a civil action in federal court based on a claim of employment discrimination pursuant to Title VII. *See Brown v. General Services Administration,* 425 U.S. 820, 828, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In the context of federal employment, "[a]n aggrieved person must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

██ Plaintiff's new claim that he was constructively discharged in 1998 is barred because he did not present it to the agency *during the administrative process.* Even the claim he did present to the agency— that he was constructively discharged in 2000—was dismissed administratively because he did not contact an EEO counselor within 45 days of July 15, 2000.

Defendant's motion for summary judgment as to the constructive discharge claim is granted.

### IV. CONCLUSION

For the foregoing reasons, defendant's motions for summary judgment as to the hostile work environment claim and the non-selection claim are denied. The defendant's motion for summary judgment as to the constructive discharge claim is granted.

SO ORDERED.