**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 26, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JACQUELINE VILLAMAR,

      Plaintiff - Appellant,

v.

LINCARE, INC.,

      Defendant - Appellee.

No. 14-3198
(D.C. No. 2:13-CV-02220-JAR)
(D. Kansas)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

The plaintiff, Ms. Jacqueline Villamar, is a Hispanic woman who was assigned to work for Lincare, Inc.[1] While assigned to Lincare, Ms. Villamar met Ms. Stacey Herschell, a Lincare employee. The two started a friendship, but the

---

[*]    The parties have not requested oral argument, and the Court concludes that oral argument would not materially aid our consideration of the appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). Thus, we have decided the appeal based on the briefs.

    Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1]    Ms. Villamar was employed by Kelly Services, Inc., which assigns its employees to work temporarily for other businesses. Ms. Villamar's assignment involved work at Lincare.

relationship soon soured and Ms. Herschell allegedly made racially hostile comments and acted abusively toward Ms. Villamar. The alleged comments and abuse led Ms. Villamar to sue Lincare under 42 U.S.C. § 1981, claiming a hostile work environment and retaliation for a protected activity. The district court granted summary judgment to Lincare, and we affirm. In affirming, we conclude that no reasonable fact-finder could infer that

- Ms. Herschell's comments and conduct created a racially hostile work environment for Ms. Villamar or

- the firing was in retaliation for Ms. Villamar's complaint to a supervisor.

## I.    Standard of Review

In reviewing the award of summary judgment, we engage in de novo review. *Rock v. Levinski*, 791 F.3d 1215, 1219 (10th Cir. 2015). Applying this standard, we must uphold the award of summary judgment if Lincare showed the absence of a genuine dispute about a material fact and entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## II.    Hostile Work Environment

In claiming a hostile work environment, Ms. Villamar relies solely on evidence involving Ms. Herschell's comments and conduct. We evaluate this evidence in the light most favorable to Ms. Villamar. *Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1267 (10th Cir. 2013).

According to Ms. Villamar, some of Ms. Herschell's comments had racial overtones; others were racially neutral. In viewing these comments favorably to Ms. Villamar, we must determine whether her race played a role in the alleged comments. *See Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1152 (10th Cir. 2008). To make this determination, we can consider not only the racial comments, but also the racially neutral comments if they had been tainted by racial hostility. *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012).

We consider these comments against the backdrop of Ms. Villamar's burden on her claim of a hostile work environment. This burden required Ms. Villamar to show that the harassment

- was pervasive or severe enough to alter the terms, conditions, or privilege of employment and
- was racially charged or based on a racial animus.

*Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). Proof of isolated incidents are not enough; "there must be a steady barrage of opprobrious racial comments." *Id.*

Ms. Villamar overheard three comments that could be interpreted as referring to Ms. Villamar's race:

1. Ms. Herschell muttered under her breath: "Brown bitch."

2. She said that certain people should stick to gardening and housework.

-3-

3.   Ms. Herschell said to another employee, on the other side of a cubicle wall: "Well, I'm going to call you Mexico because you just love going to Mexico City."

Appellant's Appendix at 88-89.

In addition to these remarks, Ms. Herschell treated Ms. Villamar badly in ways that were not overtly racial. For example, Ms. Herschell allegedly stared at Ms. Villamar, shoved past her, turned the printer off, threw Ms. Villamar's copying into a shred bin, and muttered derogatory words like "stupid bitch," "dumb bitch," "moron," and "idiot."

On appeal, we must determine whether a reasonable fact-finder could regard these actions and comments (when viewed as a whole) as so severe or pervasive that they created an abusive environment based on Ms. Villamar's race. *See* p. 3, above. A fact-finder could view the alleged comments and conduct as boorish and crude. But the comments and conduct would have crossed the constitutional line only if they had been based on race. *See* p. 3, above.

Ms. Villamar acknowledges that none of the racially oriented comments were made to her, for all were overheard. One of the three comments did not ostensibly have anything to do with Ms. Villamar's race: that certain people should stick to gardening and housework. And Ms. Herschell's comment regarding Mexico City was made to another employee. Even viewing the three comments holistically, they cannot be considered as so severe or pervasive to create a work environment tainted by racial hostility. *See Bolden v. PRC, Inc.*, 43

F.3d 545, 551 (10th Cir. 1994) (holding that two overtly racial remarks and one arguably racial comment, over an eight-year period, were not sufficiently pervasive to survive summary judgment on a hostile-work-environment claim); *see also Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642-43 (9th Cir. 2004) (upholding summary judgment for the defendant on a hostile-work-environment claim, concluding that two statements—that the plaintiff had "a typical Hispanic macho attitude" and "Hispanics do good in the field"—were not severe or pervasive).

Ms. Villamar relies not only on Ms. Herschell's racial comments, but also on her racially neutral conduct. But Ms. Villamar acknowledges that Ms. Herschell acted with hostility for reasons unrelated to race. After beginning as friends, Ms. Herschell allegedly tried to kiss Ms. Villamar's boyfriend and expressed a desire to date him. Then, Ms. Villamar did not invite Ms. Herschell to a birthday party. According to Ms. Villamar, that snub prompted an onslaught of hostility from Ms. Herschell. In these circumstances, a reasonable fact-finder might regard Ms. Villamar's version of events as a hostile workplace, but not one where the hostility became severe or pervasive because of race. Thus, we conclude that the district court properly granted summary judgment to Lincare on the claim involving a hostile work environment. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003) (holding that the defendant was entitled to summary judgment on a hostile-work-environment claim because the evidence

showed that the harassment stemmed from departmental politics and personality conflicts, not race).

## II. Retaliation

Ms. Villamar also sues under a retaliation theory, claiming that she lost her work assignment because she had complained when Ms. Herschell remarked about someone's frequent trips to Mexico City. On this claim, the district court granted summary judgment to Lincare. We agree with this ruling.

For a prima facie claim of retaliation, Ms. Villamar must show a causal connection between her protected activity and loss of the work assignment. *See Davis v. Unified Sch. Dist.*, 750 F.3d 1168, 1170 (10th Cir. 2014). To assess Ms. Villamar's proof of this element, we must consider her version of events. *See* p. 2, above.

The alleged retaliation grew out of clashes between Ms. Villamar and Ms. Herschell. When the clashes intensified, both individuals met with two supervisors, Ms. Carol Wiley and Ms. Lea Ann Cooper. Ms. Cooper cautioned that if the conflict continued, Ms. Villamar would likely be terminated because she was on a temporary assignment and Ms. Herschell was a full-time employee.

But the problems between Ms. Villamar and Ms. Herschell continued, culminating when Ms. Herschell remarked to a coworker about her frequent trips to Mexico City. This remark spurred Ms. Villamar to consult Ms. Wiley, a supervisor who worked under Ms. Cooper's direction.

Ms. Villamar faced a dilemma: she wanted to file a complaint under the company's anti-harassment policy, but Ms. Cooper had already said that she would likely terminate Ms. Villamar's assignment if the problems continued. After Ms. Cooper made this statement, Ms. Wiley declined to tell Ms. Cooper about Ms. Villamar's new complaint.

But Ms. Cooper heard about the problems from another source, Ms. Herschell, who had independently complained about Ms. Villamar to the human relations department. That complaint was forwarded to Ms. Cooper, who asked her supervisor (Mr. Phil Phenis) for guidance. He responded that Ms. Cooper should terminate Ms. Villamar.

This sequence of events (based on Ms. Villamar's account and other undisputed evidence) forecloses a finding for Ms. Villamar on the causation requirement. Mr. Phenis terminated Ms. Villamar's work assignment without any knowledge of her new complaint to Ms. Wiley. Mr. Phenis simply knew that (1) two workers were not getting along and (2) Ms. Villamar was on a temporary assignment and the coworker was a full-time employee.

To overcome Mr. Phenis's lack of knowledge about the recent complaint, Ms. Villamar relies on

- temporal proximity between her complaint to Ms. Wiley and loss of the work assignment and

- Ms. Wiley's supply of false information to Ms. Cooper.

These arguments are unconvincing.

Ordinarily, temporal proximity might support the causation element. *See McGowan v. City of Eufala*, 472 F.3d 736, 744 (10th Cir. 2006). But here the decision-maker (Phil Phenis) had no knowledge about Ms. Villamar's new complaint. If Mr. Phenis did not know about Ms. Villamar's complaint, temporal proximity could not logically support satisfaction of the causation element. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.").

Ms. Villamar also relies on Ms. Wiley's supply of false information to Ms. Cooper. Again, false information can sometimes support a retaliation motive. *See Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105, 1113-14 (10th Cir. 2005). But this inference is illogical here.

Though Ms. Wiley was not a decision-maker, she did consult with Ms. Cooper. In turn, Ms. Cooper consulted with Mr. Phenis before he decided to terminate Ms. Villamar's work assignment. This sequence of consultations might have supported the causation element if Ms. Wiley had a retaliatory animus and intended her response to Ms. Cooper to result in Ms. Villamar's termination. *See Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011) (holding that the causation element may be satisfied "if a supervisor performs an act motivated by

-8-

[actionable] animus that is *intended* by the supervisor to cause an adverse employment action . . . if that act is a proximate cause of the ultimate employment action" (emphasis in original)).

But Ms. Villamar's account could not satisfy this test because there is no evidence that Ms. Wiley had a retaliatory animus. Ms. Wiley knew that her supervisor, Ms. Cooper, had already said she would likely terminate Ms. Villamar if her problems with Ms. Herschell continued. Thus, if Ms. Wiley told Ms. Cooper about the continued problems, Ms. Villamar would likely be terminated. In these circumstances, Ms. Villamar's evidence does not support a reasonable inference of causation.

## III.    Conclusion

Viewing the evidence most favorably to Ms. Villamar, we conclude that the district court properly granted summary judgment to Lincare on the § 1981 claims involving a hostile work environment and retaliation. Accordingly, we affirm.

Entered for the Court


Robert E. Bacharach
Circuit Judge