Brigette A. McCALL, Plaintiff,

v.

BOARD OF COMMISSIONERS OF
COUNTY OF SHAWNEE,
KANSAS, Defendant.

No. 01–4140–RDR.

United States District Court,
D. Kansas.

Oct. 10, 2003.

Ira Dennis Hawver, Ozawkie, KS, for Plaintiff.

J. Steven Pigg, Fisher, Patterson, Sayler & Smith–Topeka, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination action. Plaintiff, a former corrections officer for the Shawnee County Department of Corrections, brings several claims against the defendant Board of Commissioners of Shawnee County, Kansas. She asserts claims of sexual harassment, sexual discrimination, disability discrimination, age discrimination, retaliation for protected speech, deprivation of a property interest without due process, and intentional infliction of emotional distress. She brings these claims pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; the Rehabilitation Act of 1973

(Rehabilitation Act), 29 U.S.C. § 794; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Kansas Act Against Discrimination (KAAD), K.S.A. § 44–1001 et seq. This matter is presently before the court upon defendant's motion for summary judgment.

## I.

The court will provide a review of the facts to supply some background for the arguments made by the defendant. The court will provide a more detailed review of some of the facts as we address the arguments raised by the plaintiff and defendant.

Plaintiff was employed by the Shawnee County Sheriff's Department on January 16, 1981. She assumed a position on the jail staff on January 23, 1981. In August 1997, a meeting was held at the Ramada Inn with the Shawnee County Commissioners, various jail employees and the union present. Plaintiff expressed various complaints at that meeting.

Plaintiff's employment was terminated effective August 21, 1998. She was informed that she was being terminated because she had violated policy by writing a personal check to an inmate's mother in handling inmate property transactions through her personal account. Plaintiff appealed the termination. Her appeal was settled under the following agreement: In resolution of all grievances which Officer McCall now has pending against Shawnee County and the Department of Corrections, the parties agree to the following:

1. Officer McCall will be returned to her position as Correctional Specialist on September 22, 1998, with no loss in seniority;

2. All work time lost by Officer McCall since August 21, 1997 will be treated as leave without pay, and;

3. Any further similar misconduct by Officer McCall will result in her immediate termination.

Upon reinstatement, plaintiff was permitted to choose any shift of employment. She made the following statements to management: "I can't stand looking at you people," and she was selecting "third shift where I don't have to see you."

Plaintiff complains of the following incidents after reinstatement from her August 1998 termination: (1) she had to open doors in the new part of the jail and this caused her pain; (2) she was scheduled for Aikido training shortly before she was scheduled for carpal tunnel surgery in April 1999; (3) a jail policy that was in place for two months that restricted guards from taking food into cell areas; (4) she received a written reprimand on December 2, 1999 for broadcasting a confidential matter to the jail staff; (5) failure of management to properly respond to one of her complaints; and (6) refusal to accommodate a work restriction imposed by her psychiatrist on January 14, 2000.

Plaintiff appealed the reprimand she received on December 2, 1999. On December 6, 1999, plaintiff spoke with Mark L. Bennett, Jr., who had been appointed by the County Commission to investigate allegations of wrongdoing in the Department of Corrections. Her statement to Bennett was confidential. On December 10, 1999, a meeting was held to hear her appeal of the reprimand. She walked out of that meeting. The appeal was denied. Following that meeting, she took 22 days of sick and vacation leave. She returned to work on January 11, 2000. She worked three days from January 11th to January 13th, and then five more days from January 16th to January 20th. She ceased working permanently on January 20, 2000.

Plaintiff advised the County's Human Resources Director on June 12, 2000 that she was totally disabled and would be eligible for disability benefits through the Kansas Public Employees Retirement System

(KPERS) as of July 20, 2000. On August 15, 2000, the Human Resources Department instituted a personnel status change form which placed plaintiff on inactive status. On September 8, 2000, plaintiff was approved for total disability benefits by KPERS, effective July 20, 2000. Plaintiff was awarded Social Security disability benefits on February 21, 2002. She had asserted in her request for disability benefits that she was unable to perform any job at the Department of Corrections.

On October 25, 2000, the Human Resources Department changed plaintiff's personnel status to "retirement" based upon "permanent disability." On December 11, 2000, Paul Wilson, the new director for the Department of Human Resources, notified plaintiff that her employment was terminated effective July 20, 2000, because the County had been notified that she had been approved for disability benefits effective July 20, 2000.

Plaintiff's employment with the County was governed by a collective bargaining agreement between the County and the Teamsters Local Union No. 696, which provided for grievance and arbitration procedures. Plaintiff never submitted any grievance or appeal from her notice of termination.

Plaintiff filed a document with the Kansas Human Rights Commission (KHRC) titled "You May File A Charge" on August 22, 1998. She also submitted an unverified, undated "Complaint Information Sheet." She further submitted a letter that was received by the KHRC on September 7, 1998. On December 2, 1998, the KHRC sent plaintiff a completed charge of discrimination against the defendant for allegedly terminating her on August 20, 1998 because of her sex, age and disability, with instructions to return the "SIGNED and NOTARIZED complaint" in an enclosed envelope. Plaintiff never signed or returned the complaint.

Plaintiff submitted another KHRC Complaint Information Sheet and a "You May File A Charge" form on February 13, 2001, which was received by the KHRC on February 27, 2001. On March 19, 2001, a KHRC intake specialist advised plaintiff by letter that the KHRC declined to process her complaint because it was untimely. Plaintiff has never received a right to sue letter from either the KHRC or the EEOC. Plaintiff filed the instant complaint in state court on August 27, 2001. The case was removed to this court on September 28, 2001.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct.

2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

### III.

In the pretrial order, plaintiff has specifically identified ten claims. They are as follows: (1) hostile work environment and discrimination based upon sex under Title VII; (2) hostile work environment and discrimination based upon sex under § 1983; (3) sex discrimination in her terminations in August 1998 and July 2000 under Title VII; (4) retaliation based upon exercise of First Amendment speech under § 1983; (5) retaliation for opposition to discrimination under Title VII and KAAD; (6) age discrimination, including hostile work environment, under ADEA and KAAD; (7) intentional infliction of emotional distress under state law; (8) hostile work environment, discrimination and retaliation based upon disability under ADA and KAAD; (9) hostile work environment and retaliation based upon handicap under Rehabilitation Act; and (10) violation of due process rights based upon Fourteenth Amendment under § 1983.

The defendant has raised a number of issues concerning plaintiff's claims. The court will address these arguments as we consider each of the claims made by the plaintiff.

### TITLE VII, ADEA, ADA, REHABILITATION ACT, KAAD

The defendant has asserted a number of arguments concerning these claims. The court believes that the defendant's contention that plaintiff has failed to administratively exhaust these claims is dispositive. Therefore, we need not consider the other arguments.

■ The Tenth Circuit has made clear that the exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII, the ADEA, the ADA, the Rehabilitation Act, and the KAAD. *McBride v. CITGO Petroleum Corp.,* 281 F.3d 1099, 1105 (10th Cir.2002) (ADA); *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir.1997) (Title VII and KAAD); *Khader v. Aspin,* 1 F.3d 968, 971 n. 3 (10th Cir.1993) (Rehabilitation Act); *Smith v. Board of County Commissioners of Johnson County,* 96 F.Supp.2d 1177, 1185 (D.Kan.2000) (ADEA). Although the Supreme Court has held that failure to file a timely charge with the EEOC does not deprive the courts of jurisdiction, *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385–393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Tenth Circuit has concluded that the actual filing of a charge, whether timely or not, is a jurisdictional prerequisite. *Jones v. Runyon,* 91 F.3d 1398, 1399–1400 n. 1 (10th Cir.1996), cert. denied, 520 U.S. 1115, 117 S.Ct. 1243, 137 L.Ed.2d 326 (1997). The exhaustion requirement serves the dual purpose of ensuring the EEOC has the opportunity to investigate and conciliate claims and of providing notice to the charged party of the claims against it. *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.), cert. denied, 522 U.S. 935, 118 S.Ct. 342, 139 L.Ed.2d 266 (1997).

In order to maintain a claim under Title VII, the ADEA, the ADA, or the Rehabilitation Act, a plaintiff must file a charge of discrimination within 300 days of the discriminatory action in states, such as Kansas, that statutorily prohibit discrimination. See 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. §§ 626(d)(2), 794(d); 42 U.S.C. § 12117(a). EEOC regulations state that a charge "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. To be verified, a charge must be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a).

Plaintiff has admitted that she has never filed a verified charge of discrimination with either the EEOC or the KHRC. She further admits that she has never received a right to sue letter or notice from either the EEOC or the KHRC. Plaintiff does, however, suggest that two events constitute compliance with the exhaustion requirements of the various statutes. First, plaintiff suggests that her filing of the petition in state court constitutes the timely filing of a charge under Title VII, the ADEA, the ADA and the Rehabilitation Act. Second, plaintiff contends that the information that she filed with the KHRC on February 13, 2001 constitutes the filing of a timely administrative charge of discrimination.

The court finds no support for either of the contentions raised by the plaintiff. Plaintiff cites no authority for her position that the filing of a court complaint constitutes the filing of an administrative charge. For obvious reasons, the court finds this suggestion frivolous.

■ Plaintiff has also suggested that her filing with the KHRC on February 13, 2001 constitutes a sufficient administrative filing. On that date, she submitted a "Complaint Information Sheet." The document noted that it was "For Information Purposes Only." In the section of the document where she was asked to provide the names of two individuals who could be contacted if the KHRC was unable to locate her, she wrote the name of her present counsel. The notes from the KHRC reflect that she had a subsequent telephone call with an employee in March 2001. At that time, she told the employee that "her last date of incident was July 2000." On March 19, 2001, the KHRC wrote plaintiff a letter and informed her that it had concluded that her complaint was untimely.

The court is not convinced that the submission of this intake questionnaire is sufficient to constitute the filing of an administrative charge. The questionnaire she submitted was not verified, as it was not signed under oath. We do not believe that the submission of this document is sufficient to constitute exhaustion of administrative remedies for the purposes of Title VII, the ADEA, the ADA or the Rehabilitation Act. As the Tenth Circuit has stated:

> [T]he formal charge is the key document in getting the Title VII process rolling. By statute and regulation, it must be in writing and signed under oath or affirmation, see 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.9, and it must describe the practices complained of, see id. § 1601.12(b). It therefore is the primary, and usually the only, place to which courts look to determine whether a plaintiff timely and properly exhausted her claims before the EEOC. Because it is the only document that must be sent to the charged party, it is the only document that can satisfy the notice requirement.

*Welsh v. City of Shawnee*, 182 F.3d 934, 1999 WL 345597 at *5 (10th Cir.1999).

In *Welsh*, the Tenth Circuit rejected plaintiff's argument that the district court should have considered her allegations of discrimination contained in an "information sheet" that she submitted to the EEOC. 1999 WL 345597 at *5. In doing so, the Court emphasized that the information sheet was not signed under oath. *Id.*, at *5 n. 6.

The information sheet submitted to the KHRC by plaintiff is virtually identical to the one considered in Welsh. In both cases, plaintiffs submitted information sheets that were unverified. Here, the information sheet was not even submitted to the EEOC, but rather to a state agency. Given the similarity in the two cases, the court believes that the Tenth Circuit would similarly disregard the information questionnaire here. *See also Pijnenburg v. West Georgia Health System, Inc.*, 255 F.3d 1304, 1306–07 (11th Cir.2001) (intake questionnaire does not constitute a valid EEOC charge); *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 449 (8th Cir. 1998) (signed, unverified Charge Information Form with additional handwritten pages not a charge); *Park v. Howard University*, 71 F.3d 904, 908–09 (D.C.Cir.1995) (intake questionnaire not the same as an EEOC charge), cert. denied, 519 U.S. 811, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996); *Michelson v. Exxon Research and Engineering Co.*, 808 F.2d 1005, 1009–10 (3rd Cir. 1987) (records made by EEOC based upon telephone conversation with plaintiff did not constitute EEOC charge); *Williams v. Prison Health Services, Inc.*, 159 F.Supp.2d 1301, 1312–13 (D.Kan.2001) (KHRC intake form did not qualify as a proper charge for purposes of exhaustion of administrative remedies requirement), aff'd, 35 Fed.Appx. 774 (10th Cir.2002).

Plaintiff has also made an argument based upon equitable principles. She contends that she did not need to file an administrative charge after she received notice of her termination in December 2000 because she had earlier attempted to file a charge with the EEOC in August 1998 and was informed that the agency could do nothing for her. She asserts that, based upon this earlier information from the EEOC, she "had no reason to believe that they could do [anything for her] after her December 2000 termination."

■ As previously stated, the Tenth Circuit has determined that the filing of an administrative charge is jurisdictionally required. Accordingly, equitable principles cannot be applied. However, even if we were to find that equitable principles applied, we would be forced to determine that plaintiff has not properly exhausted her administrative remedies. The incident noted by plaintiff does not constitute waiver or estoppel. We believe that the application of these concepts requires some deception by plaintiff's employer. There is no evidence that her employer took steps to prevent her from filing an administrative charge or that it was willing to let her proceed with discrimination claims absent the filing of an administrative charge.

The Tenth Circuit recently explained equitable tolling in employment cases as follows:

■ This Circuit has generally recognized equitable tolling of Title VII periods of limitation only if circumstances "rise to the level of active deception which might invoke the powers of equity to toll the limitations period." *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838–39 (10th Cir.1979). Equitable tolling might be appropriate, for example, where a plaintiff has been "lulled into inaction by her past employer, state or federal agencies, or the courts." *Carlile v. S. Routt Sch. Dist.*, 652 F.2d 981, 986 (10th Cir.1981). "Likewise,

if a plaintiff is actively misled, or has in some extraordinary way been prevented from asserting his or her rights, we will permit tolling of the limitations period." *Martinez v. Orr,* 738 F.2d 1107, 1110 (10th Cir.1984) (quotations omitted).

*Montoya v. Chao,* 296 F.3d 952, 957 (10th Cir.2002) (equitable tolling not applied where plaintiff was subjected to a "bureaucratic runaround" by employees at the EEOC).

*In Schroeder v. Copley Newspaper,* 879 F.2d 266, 271 (7th Cir.1989), the Seventh Circuit considered equitable tolling where the circumstances were similar to those in this case, except the plaintiff there had eventually filed an administrative charge of discrimination with the EEOC. Plaintiff was told by an "intake person" at the EEOC that there "wasn't much [that] she could do for [him]," and left without filing a written charge. *Schroeder,* 879 F.2d at 268. The court noted that equitable tolling principles can apply if the EEOC "lulls" or "affirmatively induces" the plaintiff into inaction. *Id.,* at 271. The court, however, affirmed the district court's grant of summary judgment to the defendant and held that the statement by the EEOC employee did not constitute "lulling" or an "affirmative inducement." *Id.* "[The intake person's] lukewarm reception does not justify equitable tolling." *Id.*

In accord with Montoya and Schroeder, this court does not find that equitable tolling would be applied here even if the plaintiff had subsequently filed an administrative charge. The argument offered by the plaintiff is insufficient to justify the application of equitable tolling since there was no active deception.

Accordingly, the court finds that the plaintiff has not exhausted her administrative remedies on her Title VII, ADEA, ADA, Rehabilitation Act and KAAD claims. Thus, the court must dismiss these claims for lack of subject matter jurisdiction.

## 42 U.S.C. § 1983

The court shall now turn to the claims asserted by the plaintiff under 42 U.S.C. § 1983. She contends that she was (1) subjected to a hostile work environment due to her sex; (2) retaliated against because of the exercise of her First Amendment rights; and (3) denied a property interest without due process. The defendant contends that the statute of limitations bars these claims. The defendant points out that any claim arising prior to August 27, 1999, two years before the petition was filed in this case, is barred. The defendant further argues that it is entitled to summary judgment on each of these claims, even if the statute of limitations does not bar them.

■■ State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims. *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Federal law, however, governs the time of accrual of § 1983 claims. *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir.1998). Such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. *Id.* Here, the Kansas two-year statute of limitations applies. *Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir.1993).

■ In determining when a cause of action accrues, the focus is on the discriminatory act and not the point in time when the consequences of the act become painful. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Thus, the suit filing period begins immediately upon the completion of a single act of discrimination, such as a discriminatory transfer, layoff or discharge.

*In National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court addressed in the Title VII context the question of whether a hostile work environment could be taken into account to the extent those acts fell outside Title VII's 180–day or 300–day limitations period for filing of a charge with the EEOC. Finding that a hostile work environment is itself an "unlawful employment practice" that occurs over a series of days or perhaps years and that "the incidents comprising a hostile work environment are part of one unlawful employment practice," the Court held that, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability." 536 U.S. at 117, 122 S.Ct. 2061.

In light of Morgan, a district court extended the holding to hostile work environment cases under § 1983. *Mack v. Port Authority of New York and New Jersey,* 225 F.Supp.2d 376, 388 (S.D.N.Y.2002). The court stated:

> If, for Title VII purposes, a hostile work environment claim is deemed to encompass all conduct that can be proven part of the same unlawful employment practice whether or not each instance of such conduct occurred within the relevant filing limitations period, it stands to reason that, as long as some of the conduct occurred within the relevant limitations period, the statute of limitations applicable to Section 1981 and 1983 claims should not bar consideration of all the conduct claimed to constitute a hostile work environment in a claim brought pursuant to those statutory provisions.

*Id.*

■ The court agrees with the analysis and conclusion reached by the New York district court. The court believes that this approach is warranted because the Title VII standards for the assessment of hostile work environment claims generally govern the analysis of such claims under § 1983.

Here, there is no dispute that some of the conduct complained of allegedly occurred as late as 2000, well within the two-year limitations period. Accordingly, the court must consider all of plaintiff's allegations in determining whether plaintiff has alleged a sufficiently hostile work environment to preclude summary judgment.

■ To support a prima facie case of a hostile work environment, the plaintiff must demonstrate that the "work place is permeated with discriminatory intimidation, ridicule, and insult that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21–22, 114 S.Ct. 367. In determining whether an environment is hostile or abusive the court must look at all the circumstances. *Id.* at 23, 114 S.Ct. 367. These may include: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is relevant to determining whether

the plaintiff actually found the environment abusive.

*Id.* at 23, 114 S.Ct. 367. "[N]o single factor is required." *Id.*

In *Bolden v. PRC Inc.,* 43 F.3d 545 (10th Cir.1994), cert. denied, 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995), an analytical framework was provided for determining whether a plaintiff had presented sufficient evidence to demonstrate a genuine issue of material fact in dispute. The plaintiff in Bolden was required to show, based upon the totality of the circumstances, that: "(1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus." *Id.* at 551. Accordingly, in this case, we must determine whether the alleged conduct was (1) pervasive or severe enough to alter the terms, conditions, or privileges of employment; and (2) whether the evidence demonstrates that the acts complained of were gender based.

■ Plaintiff has conceded that she has no complaint of sexual harassment by any agent or employee of the defendant after August 1998. Plaintiff has pointed to other incidents where she believes that she was discriminated against, but she has indicated she believes those incidents were either based upon her age or her disability. In response to defendant's motion for summary judgment, she notes two other incidents where she believes she was discriminated against: (1) when the defendant refused to honor her doctor's order that she not work more than eight hours a day; and (2) when she was retroactively terminated in December 2000. She suggests that the latter incidents are sufficient alone to show severity and pervasiveness for the purposes of demonstrating a hostile work environment.

The court has thoroughly examined the record produced by the parties. Plaintiff has pointed to various incidents where she believes that she was treated unfairly by the defendant. The court is not convinced that plaintiff has demonstrated that these incidents meet the frequency or severity requirements of actionable harassment. Plaintiff has pointed to very few incidents that she believes constituted harassment based upon her sex. The frequency of the incidents is clearly insufficient to establish a hostile work environment. *See Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1366 (10th Cir.1997) (five separate incidents over a span of approximately sixteen months not sufficiently pervasive to create abusive work environment); *see also Griffin v. Pinkerton's, Inc.,* 173 F.3d 661, 665 (8th Cir.1999) (five incidents over period of approximately one year not sufficiently pervasive to constitute abusive work environment); *Gipson v. KAS Snacktime Co.,* 171 F.3d 574, 579 (8th Cir.1999) (two incidents in two-month period not sufficiently pervasive to create abusive work environment). In addition, none of the incidents is alone severe enough to constitute a hostile work environment. Moreover, the court does not find that plaintiff has demonstrated that these actions were taken because of her gender. Plaintiff has relied solely upon conclusory allegations of discrimination to respond to the defendant's motion for summary judgment. There is simply insufficient evidence before the court to allow a fact finder to render a verdict on this claim in plaintiff's favor. Accordingly, the court shall grant summary judgment to the defendant on this claim.

The court shall now turn to plaintiff's § 1983 claim based upon the First Amendment. Plaintiff contends that she was retaliated against for speaking out on the improper treatment of prisoners and opposing discrimination on the basis of sex, age and disability. She notes that the retaliation took the form of a hostile work

environment, letters of discipline, disparate treatment and termination. In the pretrial order, plaintiff suggests that she made the aforementioned complaints to (1) various county commissioners at least four times; (2) Mark Bennett on December 6, 1999; (3) the KHRC; and (4) various co-workers by publishing e-mails.

The court believes that at least some aspects of this claim are not barred by the statute of limitations. The court notes that at least the termination occurred within the two-year limitations period. Accordingly, the court shall consider the merits of the claim.

■ A two-part test must be applied in evaluating claims of public employees alleging that their employers have retaliated against them for exercising their First Amendment rights. *Connick v. Myers,* 461 U.S. 138, 142–54, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). First, one must determine whether the plaintiff's statements can be "fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. Second, courts must determine whether the " 'interests of the [employee], as a citizen, in commenting upon matters of public concern' " outweigh the " 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* at 142, 103 S.Ct. 1684 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731).

We are confronted here with the threshold question of whether plaintiff's speech involved a matter of public concern. The standards to be applied to this issue were succinctly set forth in *David v. City and County of Denver,* 101 F.3d 1344, 1355 (10th Cir.1996), cert. denied, 522 U.S. 858, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997) as follows:

■ In deciding whether a particular statement involves a matter of public concern, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen. See *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690. Speech that pertains to a public agency's "discharging its governmental responsibilities" ordinarily will be regarded as speech on a matter of public concern. See *id.,* 461 U.S. at 148, 103 S.Ct. at 1690–91. In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern. See *id.* at 147–49, 103 S.Ct. at 1690–91; *Woodward [v. City of Worland],* 977 F.2d [1392] at 1403 [ (10th Cir.1992), cert. denied, 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993) ]. In distinguishing between these two categories of speech, courts must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. "The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen]." *Workman [v. Jordan],* 32 F.3d [475] at 483 [ (10th Cir.1994), cert. denied, 514 U.S. 1015, 115 S.Ct. 1357, 131 L.Ed.2d 215 (1995) ].

■ The court has again conducted a thorough review of the record. Once again, the court fails to find support for the plaintiff's claims. Initially, we note that plaintiff made most of her complaints as an employee rather than a citizen. She complained primarily of various forms of harassment directed at her during her employment. Her speech focused on her own employment and she made no allegations concerning harassment involving others. Under these circumstances, we find that her statements did not involve a matter of

public concern. See *David*, 101 F.3d at 1356 (police officer's administrative complaints and letter to city attorney alleging sexual harassment by fellow officers did not address matters of public concern); *Woodward*, 977 F.2d at 1403 (employees of county sheriff's department alleged that their supervisors and co-employees had retaliated against them after they filed formal sexual harassment complaints against a police officer addressed personal matters, not matters of public concern).

In response to the defendant's motion, plaintiff points exclusively to comments she made to Bennett on December 6, 1999 as the basis for this claim. She did apparently mention a number of other matters in addition to her own unfair treatment during this conversation. These matters, which include allegations of sexual harassment of other employees, drug dealing by jail staff, misappropriation of funds and sexual relations between correctional officers and inmates, do indeed constitute matters of public concern. However, as correctly pointed out by the defendant, there is no evidence in the record that any of the staff at the Shawnee County Jail, including the individual who terminated plaintiff, was ever aware of plaintiff's statements to Bennett or their content. As noted above, Bennett was engaged in a confidential investigation of concerns of improper conduct at the jail. There is no evidence that anyone involved with the defendant became aware of who spoke with Bennett or the content of these statements. Given these circumstances, the court must grant summary judgment to the defendant on this claim.

 Finally, we turn to plaintiff's last § 1983 claim. She contends that her Fourteenth Amendment due process rights were violated when she was terminated without a hearing. In the instant motion, the defendant contends that it is entitled to summary judgment on this claim be-cause plaintiff was not deprived of a property interest since plaintiff does not dispute the basis for her termination from employment. The defendant points out that plaintiff has conceded that she was disabled from her job. Plaintiff has failed to confront this issue in her response to the defendant's motion.

This claim requires the court to examine the nature of plaintiff's claim concerning termination. The due process aspect of this claim, as with the discrimination and retaliation aspects, is indeed curious. The uncontroverted facts show that plaintiff ceased working on January 20, 2000. On September 8, 2000, plaintiff was approved for total disability benefits by KPERS, effective July 20, 2000. Plaintiff was awarded Social Security disability benefits on February 21, 2002. On December 11, 2000, plaintiff was notified by the County's director of the Department of Human Resources that her employment was terminated effective July 20, 2000 because the County had been notified that she had been approved for disability benefits effective that date.

Plaintiff's contention concerning her termination concerns the timing of it, not its merit. She appears to contend that she was "strung along" for five months before she was notified of her termination. She suggests that this was discriminatory, retaliatory and in violation of her due process rights. Given the aforementioned uncontroverted facts, the court is at a loss to see how the defendant mistreated the plaintiff in any fashion. The defendant appears to have acted quite properly in making the termination order in December after receiving word in September that plaintiff had received disability benefits effective on July 20, 2000. It is quite clear that plaintiff's termination did not deprive her of a property interest. *See Hardy v. Village of Piermont, New York*, 923

F.Supp. 604, 607–08 (S.D.N.Y.1996) (employee not entitled to due process hearing prior to being placed on medical leave because plaintiff admitted she was unfit for active duty). Plaintiff has conceded that she is totally disabled from performing her job. A due process hearing could not have provided her any relief. Accordingly, the defendant is also entitled to summary judgment on this claim.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The court shall finally turn to plaintiff's claim of intentional infliction of emotional distress or outrage. Plaintiff has suggested that this claim is based upon the following conduct by the defendant: (1) her termination; (2) the letter of reprimand she received for abuse of sick leave; (3) the requirement that she attend aikido training; (4) the denial of the ability to have food at her work station; and (5) the disregard of medical orders limiting her workday to eight hours.

To establish a prima facie case of outrage, plaintiff must show: (1) defendant's conduct was intentional or in reckless disregard of the plaintiff; (2) defendant's conduct was extreme and outrageous; (3) there is a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe. *Bolden*, 43 F.3d at 553.

Here, the focus is upon the second requirement. Kansas has established a very high standard for the common law tort of intentional infliction of emotional distress. *Holdren v. General Motors Corp.*, 31 F.Supp.2d 1279, 1282 (D.Kan. 1998). "Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harassment claims." *Bolden*, 43 F.3d at 554. Conduct to be a sufficient basis for an action to recover for emotional distress must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society. This decidedly difficult threshold has been maintained so that worthy claims may be separated from those "based on trivialities or hyperbole." *Rupp v. Purolator Courier Corp.*, 790 F.Supp. 1069, 1073 (D.Kan.1992), aff'd, 45 F.3d 440 (10th Cir.1994). As such, liability "does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. Members of the public are necessarily expected and required to be hardened to a certain amount of rough language and to occasional acts and words that are definitely inconsiderate and unkind." *Anspach v. Tomkins Industries, Inc.*, 817 F.Supp. 1499, 1506 (D.Kan.1993), aff'd, 51 F.3d 285 (10th Cir.1995).

The court has examined the factual basis for this claim, and we do not find that it rises to the necessary level. Claims of outrage in Kansas are reserved for the most egregious circumstances. Although some of the alleged conduct might be sufficient to sustain a claim under Title VII, the ADEA, the ADA or other acts prohibiting discrimination, we do not find that it can reasonably be regarded as so extreme and outrageous that it goes beyond the bounds of decency and is utterly intolerable in a civilized society. *See Glover v. Heart of America Management Co.*, 38 F.Supp.2d 881, 888 (D.Kan.1999) (existence of hostile work environment under Title VII does not necessarily require a finding of outrageous conduct). Accordingly, the court shall also grant summary judgment to the defendant on this claim.

## IV.

In sum, the court finds that the defendant is entitled to summary judgment on all of the claims made by the plaintiff. The court lacks jurisdiction to consider plaintiff's Title VII, ADA, ADEA, Rehabil-

itation Act, and KAAD claims. Summary judgment must be awarded to the defendant on the other claims because plaintiff has failed to demonstrate sufficient evidence in support of them.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 53) be hereby granted. The court lacks jurisdiction to consider plaintiff's Title VII, ADA, ADEA, Rehabilitation Act and KAAD claims. Summary judgment must be awarded to the defendant on the other claims because plaintiff has failed to demonstrate sufficient evidence in support of them.

**IT IS SO ORDERED.**